9 N.J. 280 (1952)
88 A.2d 193
IN THE MATTER OF THE ESTATE OF JACOB B. HOPPER, DECEASED.
SALVATORE D. VIVIANO, PLAINTIFF-RESPONDENT,
v.
EMMA HOPPER, DEFENDANT-APPELLANT.
The Supreme Court of New Jersey.
Argued April 7, 1952.
Decided April 28, 1952.
*281 Mr. Winthrop Watson argued the cause for appellant.
Mr. Hugh C. Spernow argued the cause for respondent.
The opinion of the court was delivered by WACHENFELD, J.
This will contest, initiated in the County Court, where the will was sustained, was taken to the Appellate Division, where it was again upheld by a divided court. One judge having dissented, the appellant was automatically entitled to come here.
The residuary legatee is a lawyer, which fact occasions most of the difficulty. Jacob B. Hopper died August 14, 1948, leaving no issue but survived by his wife, the appellant here. His will, dated July 19, 1948, was admitted to probate by the surrogate. The widow contested the probate in the County Court, alleging the testator was of unsound mind and the will was the product of undue influence.
On appeal the issue of unsound mind was abandoned, leaving the question of the effect of the confidential relationship between the testator and the proponent of the will, the residuary legatee, and the query as to whether or not there was undue influence.
*282 The burden of proving undue influence usually lies on the contestant, but if a will benefits one who stood in a confidential relationship to the testator and there are additional circumstances of suspicious character, a presumption of undue influence is raised and the burden of proof is shifted to the proponent.
A confidential relationship arises where trust is reposed by reason of the testator's weakness or dependence or where the parties occupied relations in which reliance is naturally inspired or in fact exists, as the relation between client and attorney. In re Heim, 136 N.J. Eq. 138 (E. & A. 1945); In re Romaine, 113 N.J. Eq. 477 (Prerog. 1933), affirmed 115 N.J. Eq. 172 (E. & A. 1933).
"Both courts and lawyers should welcome any inquiry into the fairness of transactions between attorney and client, and courts should never hesitate to condemn where the conduct of the attorney has been unconscionable. In no other way can the high reputation of the legal profession, of which its members are justly proud, be maintained." Dwyer v. Anderson, 113 N.J. Eq. 210 (Ch. 1933).
The Appellate Division placed the burden of proving the will upon the residuary legatee and held the evidence to countervail the presumption raised against him by the circumstances was required to be impeccable and convincing. The quarrel, therefore, is not with the rule of law employed but with its application to the facts involved.
The testator died in his eighty-sixth year, leaving his widow, 84. He made three wills, the first on January 1, 1947, drafted by Viviano, the testator's next-door neighbor. The entire estate was left to the widow with Viviano as the executor. The second will was executed July 6, 1948, about five weeks before his death. It was prepared by Edgar A. DeYoe and left the residuary estate in trust, directing the principal and income to be used by his widow and, upon her death, the remainder to go to the Holland Home. Viviano was again named executor and trustee.
The third will, the one in dispute, was executed on July 19, 1948, about three and one-half weeks before his death. In it *283 the entire estate was left in trust with the income and "as much of the corpus * * * as shall be necessary" payable to his wife for life, with liberal allowances for living expenses, sickness, including hospital, sanitarium charges, nurses' attendance, doctors' and burial charges, and directed the real estate should not be retained for a period of more than one year after the date of decease. He also made a bequest to his niece, contingent upon her surviving both him and his wife, and gave the residuary estate to the executor and trustee, "my friend Salvatore D. Viviano * * *."
In his final months the testator was physically weak and sick, unkempt in appearance, slovenly in habits and often dressed in old clothes described as rags. His speech and hearing were impeded and he had difficulty in carrying on a conversation; he frequently stumbled and fell. He had many objectionable habits which it is not necessary to detail. While his ways and manners were not exemplary, his peculiarities need not be dwelt upon further, the issue of testamentary capacity having been eliminated from this litigation.
The estate was not large. The real estate was valued at $12,000 and the personal property did not exceed $200.
Viviano did not take any part in drafting the last will. He was afraid of criticism and the animosity of the members of the testator's family. He refused to redraft or change the will and directed the testator to go elsewhere.
A realistic approach to the problem requires a complete re-study and examination of the record. An analysis of the reasons which apparently persuaded the respective judges below to come to the conclusions they arrived at is also interesting and enlightening.
The majority opinion emphasizes the fact that Kreamer, who drew the last will, had four sittings with the testator. His testimony was characterized as "frank and believable." It commented upon the opportunity of the trial court to evaluate the credibility of the witnesses as they appeared before it to determine whether or not there existed undue influence, pointing out the influence which the law denominates *284 undue must be such as to destroy the free agency of the testator and amount to moral or physical coercion.
The concurring opinion expresses confidence in Viviano's stated reasons for not drawing the will because of the enmity he incurred from the widow and the niece, and concludes it was natural for him to avoid the responsibility for re-drafting and to send the testator elsewhere to have it accomplished. It classifies the direction to sell the house as "harsh and illogical" but points out Mr. Kreamer, who drew the will, questioned this provision but the deceased insisted he wanted it that way because he was afraid his wife would continue to take care of her sister, to her detriment, if she were allowed to live in the house longer.
The minority opinion stresses the illiteracy of the testator, his inability to read or write, his feebleness, his untidiness, and the fact that he was highly eccentric, and comes to an opposite factual conclusion. It gives little credence to the residuary legatee's testimony in saying he did not know the changes the decedent proposed to make and was not aware he had been designated residuary legatee until three weeks after Hopper's death, when he opened the will in the presence of Mrs. Hopper and Kreamer. It determines the disposition to be unnatural and criticizes the power to re-invest the proceeds without limitation or restriction.
These cases are always difficult of solution, as indicated by the divergent conclusions arrived at in the Appellate Division. The uncertainty arises from the contrary impression the facts in each particular case make upon the mind attempting to adjudicate them.
Vigilant precaution should dominate such situations as here portrayed, and the legal presumption against the proponent of the will, where he is the residuary legatee, the testator's lawyer and confidante, and friendly with the scrivener of the will, should be given full weight.
It is notable that the feebleness of the testator referred to throughout the evidence is physical rather than mental. The history everywhere indicates he had a firm mind of his *285 own and his determinations were not easily shaken. When he had decided what he wanted to do, he usually did it regardless of its propriety or consequences. The majority opinion said he "had a strong will." Our examination of the record leads us to a like conclusion.
We are clear the evidence submitted to overcome the presumption of undue influence was convincing and of the quality required by our adjudications. The proponent of the will successfully carried his burden. We do not find sufficient in the record justifying us in upsetting the concurrent findings of the two courts below.
The judgment is affirmed without costs.
For affirmance  Justices OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN  5.
For reversal  Chief Justice VANDERBILT, and Justice HEHER  2.