IN THE MATTER OF THE PROBATE OF THE WILL OF
CORA S. RITTENHOUSE.

Argued September 19, 1955—Decided October 17, 1955.

Mr. *Ryman Herr* argued the cause for caveatrix-appellant, Cora Salter (*Messrs. Herr & Fisher,* attorneys).

Mr. *W. Reading Gebhardt* argued the cause for proponent-respondent, Nicholas F. Gallicchio (*Messrs. Gebhardt & Kiefer,* attorneys).

The opinion of the court was delivered by

WACHENFELD, J. This is an appeal from a judgment of the Hunterdon County Court, Probate Division, admitting to probate the will of Cora S. Rittenhouse. We granted certification prior to hearing in the Appellate Division.

Testatrix died on August 7, 1953 at the age of 82. By her last will and testament, which was executed on January 6, 1949 at the age of 78, she named as her only specific devisee, residuary legatee and executor, Nicholas F. Gallicchio, a counsellor-at-law of this State, who is also the proponent of the will. Aside from an attorney-client relationship which existed between testatrix and Gallicchio, of which more hereafter, they were unrelated. However, testatrix had living at the time the will was prepared at least 15 cousins and a brother-in-law and a sister-in-law to whom she bequeathed a total of $2,100. It is not clear from the record before us exactly how much the devise and the residuary legacy to Gallicchio are worth, although it would appear to be a considerable sum.

Upon the offering of the will for probate, one of the cousins, Cora Salter, filed a caveat and charged the will was the product of undue influence on the part of Gallicchio.

The trial of this cause in the court below occurred on five hearing days extending over a period of 13 months, which undoubtedly contributed much to the confusion indicated by the record before us. Neither the attorneys nor the court itself could be expected to produce a record of fundamental clarity under such a handicap. The interruptions, delays and the procedure pursued below are not to be commended.

On the first hearing day the proponent produced three subscribing witnesses, Samuel B. Whiteley and Louis N. Young, president and vice-president, respectively, of the

bank of which proponent was a director and general counsel, and Dr. Lloyd A. Hamilton, the testatrix' physician. They testified, in substance, that the will was executed in the directors' room of the bank; that the testatrix acknowledged it to be her last will and testament; that she had read it and it represented her wishes; and that the proponent, Gallicchio, was not present.

The will was in fact drawn by Philip Gebhardt, an attorney and counsellor-at-law in this State for many years, who, the subscribing witnesses testified, was present and attended to the execution of the will.

Following the testimony of the subscribing witnesses, the will was offered for probate, but the caveatrix moved to have the proponent take the witness stand before she went ahead with her case. The trial was recessed and at the next session, five months later, the court suggested Gallicchio take the stand and answer just three questions. On direct examination, Gallicchio testified he had had nothing to do with the preparation of the testatrix' will, was not present at and did not arrange for the execution of the will nor the place or the manner in which the will was executed.

Counsel for the caveatrix then cross-examined the proponent at great length, at times adopting him as his witness. At the conclusion of the cross-examination both sides declined to go forward with further evidence, the caveatrix contending enough had been shown to cause the burden of proof to shift to the proponent and the proponent claiming the burden still lay with the caveatrix.

At this juncture the court ruled that the burden lay with the caveatrix despite the fact that previously the court had announced: "Well, I have read the case of *In re Davis'* [*Will*] which is in 14 *N. J.* 166 and I believe in view of the testimony thus far that perhaps the proponent should proceed."

The applicable legal rule in such a situation has been stated by this court on many occasions: the burden of proving undue influence lies upon the contestant unless the will benefits one who stood in a confidential relationship to the

testatrix and there are additional circumstances of a suspicious character present which require explanation. In such case, the law raises a presumption of undue influence and the burden of proof is shifted to the proponent. *In re Hopper's Estate*, 9 *N. J.* 280 (1952); *In re Davis' Will*, 14 *N. J.* 166 (1953); *Gellert v. Livingston*, 5 *N. J.* 65 (1950). The "additional circumstances" requiring explanation have been classified as "slight" in *Gellert v. Livingston, supra,* followed in *In re Weeks' Estate*, 29 *N. J. Super.* 533 (*App. Div.* 1954).

The will admitted to probate was testatrix' fourth known will. The first was prepared by Gallicchio in the spring or summer of 1948 but its contents are not before us since it was not found among testatrix' effects and Gallicchio was unable to locate any copy in his office. A second will was prepared by Gebhardt in late summer or early fall of 1948, but it too was not produced at the hearing. A third will, executed by testatrix on October 6, 1948, was drawn by Ryman Herr, a counsellor-at-law of this State, who is also the attorney for the caveatrix in this proceeding. Under this will testatrix made bequests to ten relatives and four personal friends, totalling $6,500, and a charitable bequest of $200. Gallicchio received a bequest of $2,000 and the balance of the estate was left to testatrix' cousin, Lina Williams, who was also named executrix.

The contents of the fourth and final will have already been described.

During her lifetime testatrix was a domestic and was principally employed doing household work on a day-to-day, week-to-week or month-to-month basis. She first became acquainted with Gallicchio in 1935 or 1936 when she consulted him in connection with certain property she was about to sell. Thereafter she retained him in two other matters, the first being a minor incident the date of which does not appear. The second occasion was in May 1948 when testatrix retained Gallicchio to represent her in her capacity as administratrix of the estate of her deceased brother, Thomas Slater. Certain properties were included in the assets of this

estate and Gallicchio directed their sale. With the proceeds he purchased a home for the testatrix in Lambertville, New Jersey, immediately adjoining his law office and home. He took title to this property in his own name as trustee for the testatrix, executing a declaration of trust which was recorded with the deed.

Apparently in late September or early October of 1948 testatrix became concerned with the manner in which Gallicchio was handling her brother's estate. At about that time Gallicchio introduced Gebhardt to her, evidently in an effort to convince her no impropriety had been committed by him. Presumably it was during this period that Gebhardt drew testatrix' second will.

By October 6, 1948, however, testatrix' dissatisfaction with Gallicchio had reached the point where she retained another lawyer, Ryman Herr, to take over the handling of the estate. Almost immediately with her retention of Herr as her attorney, she drew her third will, which has already been referred to.

When Gallicchio was advised that the testatrix had retained Herr to represent her interest in her brother's estate, Gallicchio in turn retained Gebhardt to represent him in the event any charges were made against him in connection with his handling of the estate. There followed a somewhat acrimonious series of letters between Gallicchio, Gebhardt and Herr concerning the turning over to Herr of the estate's papers then in Gallicchio's possession. The papers eventually were surrendered to Herr in late October or early November.

On December 14, 1948 there was another change of heart and the testatrix notified Herr that she wanted Gallicchio "to act as my attorney" and terminated Herr's retainer. The fourth will was prepared by Gebhardt less than a month later. The original remained in Gebhardt's possession until testatrix' death some three and a half years later.

Under cross-examination by counsel for the caveatrix, Gallicchio was unable to give a satisfactory explanation as to the nature of the relationship existing among himself, Gebhardt and the testatrix. From the confused record

before us, however, it would appear the testatrix did not independently choose Gebhardt as the scrivener of her will. It is fair to assume from the record that she was influenced to do so by Gallicchio.

Unquestionably, Gebhardt and Gallicchio had a professional relationship in connection with the Slater estate. Gallicchio introduced testatrix to Gebhardt at first to explain his own conduct in connection with the estate and subsequently retained Gebhardt to represent him personally. It was during or shortly after the period when Gebhardt was acting as Gallicchio's attorney that Gebhardt became the scrivener of the fourth and final will.

Nor was any adequate explanation forthcoming for Gallicchio's purchase of a home for the testatrix adjoining his own office and home. More intriguing is the unanswered inquiry as to why he acquired title thereto in himself as trustee for the testatrix. Then, too, he was unable to define or explain the extent of the friendship between himself and the testatrix. Finally, his testimony as to the knowledge of the will in his favor and its contents prior to the testatrix' death is almost completely contradictory.

The record, other than the proponent's appraisal, is barren of any positive testimony concerning the testatrix' physical or mental state. Although her personal physician testified as a subscribing witness, neither counsel nor the court chose to elicit this information, without which a determination of undue influence is difficult of solution.

That she might have been easily influenced is suggested by a letter written by Gebhardt to Herr on October 22, 1948 when Gebhardt was representing Gallicchio. He then described the testatrix as a "poor soul" who was "just a victim of influence from one cousin and then another." If the testatrix' mind was subject to influence by relatives, presumably she would likewise, and to greater degree, be subject to influence by an attorney enjoying a confidential relationship with her.

Herr, after testatrix had dispensed with his services, wrote Gallicchio on December 15, 1948 that "what this lady needs

is a guardian." The record gives no light as to whether or not this assertion was justified.

On the record before us, we conclude there are presented sufficient circumstances of a suspicious nature requiring explanation which warranted the shifting of the burden of proof from the contestant to the proponent and that his testimony on the record now before us did not have the convincing or impeccable quality required by our decisions to remove the aura of suspicion. *In re Morrisey's Estate*, 91 *N. J. Eq.* 480 (*Prerog.* 1920); *In re Heim's Will*, 136 *N. J. Eq.* 138 (*E. & A.* 1945).

The philosophy employed in approaching the problem here encountered was concisely set forth in *In re Hopper's Estate, supra,* where we said (9 *N. J.,* at *page* 284):

"Vigilant precaution should dominate such situations as here portrayed, and the legal presumption against the proponent of the will, where he is the residuary legatee, the testator's lawyer and confidante, and friendly with the scivener of the will, should be given full weight."

We think it would be improper, on the limited record submitted, to determine with finality that undue influence was in fact exercised by the proponent.

Complications arose from the conflicting rulings made below and he did not offer any evidence to overthrow the presumption because the last trial ruling was to the effect that the burden remained with the contestant.

We think it only fair, under the circumstances presented to us, to remand the cause to be redetermined below, giving each of the parties full opportunity of presenting any evidence having a material bearing on the truth of the issues joined.

Reversed. Costs to abide the result.

*For reversal and remandment*—Chief Justice VANDERBILT, and Justices OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—6.

*For affirmance*—None.