**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0258-16T4

IN THE MATTER OF THE ESTATE OF
EDWARD WLODARCZYK,

    Deceased.

_____

Argued May 21, 2018 — Decided July 17, 2018

Before Judges Ostrer, Rose, and Firko.

On appeal from Superior Court of New Jersey,
Chancery Division, Probate Part, Camden
County, Docket No. CP-0037-2015.

John E. Lanza argued the cause for appellant
Anna Wlodarczyk (Lanza & Lanza, LLP,
attorneys; John E. Lanza, of counsel and on
the briefs; Christopher J. Trofimov, on the
briefs).

David A. Thatcher argued the cause for
respondent Trinity Evangelical Church
(Thatcher Passarella, PC, attorneys; David A.
Thatcher, of counsel and on the brief).

Marc A. Krefetz, Deputy Attorney General,
argued the cause for respondent State of New
Jersey (Gurbir S. Grewal, Attorney General,
attorney; Melissa H. Raksa, Assistant Attorney
General, of counsel; Marc A. Krefetz, on the
brief).

PER CURIAM

In this probate matter, plaintiff Anna Wlodarczyk appeals from a July 5, 2016 order granting Trinity Evangelical Lutheran Church's ("Trinity Church") motion for involuntary dismissal at the close of plaintiff's case. The Attorney General of New Jersey ("AG") in his parens patriae capacity, joined in the motion. Plaintiff also appeals from an August 31, 2016 order granting her counsel fees, arguing the amount awarded was less than the amount sought. For the reasons that follow, we affirm the July 5, 2016 order, and vacate the August 31, 2016 order.

I.

This appeal has its genesis in a "pour-over" will and revocable living trust made by testator Edward Wlodarczyk, at the age of sixty one. Unmarried and childless when testator executed the will and trust, plaintiff was his mother and sole heir.

Pursuant to the terms of the will, testator divided his $2.1 million estate between plaintiff and Trinity Church in equal shares. He also provided that, if plaintiff predeceased him, her fifty percent share would be divided equally between his cousins, Richard Robinson and Joan Dufner. If the named beneficiaries predeceased testator, their shares would be distributed according to intestacy laws. As a pour-over will, testator devised his entire estate, including personal and household effects, to the trust.

According to the trust agreement, testator designated himself as the sole trustee until his death. After his death, the trust income and principal distribution would be divided equally between plaintiff and Trinity Church. The trust also directed that if plaintiff predeceased testator, her share of the trust estate would be divided equally among Robinson, Dufner, Dr. Christine Newman and Jeanne Perch. Further, if Trinity Church were not in existence at the time of testator's death, its share would be distributed to plaintiff.

Testator's will and trust were prepared by David A. Faloni, Esq., pursuant to a referral from Kaehall Estate Planning Coordinators ("Kaehall"). Because Kaehall referred a large volume of clients to his firm, Faloni agreed to accept a flat fee of $375 to draft "any or all" documents listed in a Kaehall form ("referral form"), including the documents executed by testator. Pursuant to the terms of the referral form, testator was not required to retain Faloni, but testator checked the box indicating his desire to do so.

The referral form had been provided to testator by Kaehall's representative, Bernice Folcher, during their meeting at plaintiff's home on April 20, 2007. Earlier that day, Folcher had met with plaintiff to review potential changes to her existing

trust.    Plaintiff told Folcher her son was interested in establishing a living trust agreement.

Folcher memorialized information she received from testator about his assets, beneficiaries, and special directives and instructions, on an intake form.  Folcher did not suggest to testator how to distribute his assets.  Rather, testator was "very opinionated, and he told [her] exactly what he wanted."  Plaintiff was present during Folcher's meeting with testator.  Plaintiff did not object to testator's disposition of his assets.

Testator issued a check to Faloni for $375, and a check to Kaehall for $1620.  Folcher sent both checks and the intake form to Kaehall, which in turn contacted testator, verified his information, and forwarded the paperwork to Faloni.

Following receipt of the paperwork by his office, Faloni's paralegal contacted testator and also confirmed his information, including the names and addresses of his intended beneficiaries and the shares of his estate he wished to bequeath.  Faloni did not personally meet testator, but spoke with him telephonically for approximately thirty-five to forty minutes before drafting his will and trust.[1]

---

[1] In addition to the will and trust at issue in this appeal, Faloni drafted a living will, a general power of attorney, and a power of attorney for health care.

During their conversation, Faloni explained the distinction between wills and trusts, and reviewed Medicaid planning and estate taxation. They discussed testator's intentions, and testator indicated his "mother[] wants to make sure she's taken care of." Testator told Faloni he would do so through Medicaid planning, to avoid depleting his estate if he were hospitalized for an extended period of time. Faloni believed testator procured insurance to provide additional protection for his mother. Faloni did not suggest that testator should devise part of his estate to Trinity Church.

Pursuant to testator's instructions, Faloni forwarded the completed documents to Kaehall for delivery to testator for execution. Faloni included correspondence, explaining the process to execute each document properly. According to Folcher, testator read the documents, which she then notarized in the presence of witnesses.

Testator died on November 21, 2012. After his will was admitted to probate, plaintiff filed a verified complaint,[2] challenging the validity of the will and trust. In particular, plaintiff claimed the documents were unenforceable because they

---

[2] Plaintiff did not personally verify the complaint. Rather, the verification is signed by Dufner as plaintiff's "Attorney in Fact" pursuant to a power of attorney executed by plaintiff on November 21, 2012, the same day testator died.

were the product of a consumer fraud scheme. She also alleged the documents were the result of "mistake by way of a scrivener's error" because they did not evince her son's intention to provide for her.

Trial was held on two non-consecutive days in June 2016. Following oral argument but prior to the commencement of testimony, the judge denied plaintiff's motions to disqualify the AG, and permit Dufner to testify about plaintiff's state of mind.

The judge granted plaintiff's motion to read portions of the deposition of Kaehall's former Vice President, Keith Ervin, because he could not be served with process. Apparently, Ervin had been deposed in a separate legal malpractice and tort action, filed by testator's executor, pertaining to a "multi-state trust marketing scheme." Among other things, Ervin testified generally that Kaehall had employed "unlicensed[] insurance or annuity salepersons to solicit potential customers who required estate planning services."

Ninety-five years old at the time of trial, plaintiff did not testify because she did not have the "capacity or the strength." Plaintiff presented the testimony of Folcher and Faloni. In doing

so, the trial judge denied her application to treat both as "hostile witnesses."[3]

Following the conclusion of oral argument on June 22, 2016, the trial judge dismissed plaintiff's complaint, rendering a cogent oral opinion. Initially, the court recognized testator's capacity was not in issue. Nor was testimony adduced that testator did not understand English or otherwise "had any trouble understanding what he was doing and voicing his opinion."

Relevant to plaintiff's claims, the judge found Faloni's use of a template to prepare the will and trust was not fatal, reasoning "[l]awyers do it all the time, and they trade documents and update them[.]" Nor did she find any issue with the amount of time Faloni spent with testator during their telephone conference, following his paralegal's initial contact and verification of testator's information. Rather, the judge found Faloni "explain[ed] what the document accomplishes."

Specifically, the judge observed testator's wishes were simple and the resulting documents were simple:

> The result is this. I, as the decedent, when I die, I want to do this. I want half of my money to go here, and I want half of my money to go here. And if my mother's not alive, these are the people I want as substitutes. If the church no longer exists, this is where

---

[3] During her testimony, Folcher admitted she had twice been convicted of fraud.

A-0258-16T4

I want it[s money] to go.  How much . . . clear[er] could it be than that?

The judge also discounted the mistakes recorded by Folcher in Kaehall's intake sheets as immaterial because they had no bearing on how testator's assets would be distributed at the time of his death.[4]  Rather, the court found "other than . . . try[ing] to sell him another product, exactly what he owned" was not relevant.  Whether Folcher "was hoping to parlay that into some kind of estate planning, like an annuity . . . [is not] part of this case."

Determining there was no indication Folcher did anything wrong by performing the intake and referral in the present case, the judge recognized Folcher "[was not] even trying, at the time she met [testator] to solicit him to sell him a product."  On the contrary, Folcher spoke with testator at plaintiff's suggestion.

For the sake of argument, the judge assumed Folcher was not a credible witness and had in fact solicited testator directly.  Nevertheless, the judge recognized she still could not conclude there was any connection between Folcher and Trinity Church.

---

[4] The intake form contained some obvious errors.  For example, Folcher listed assets in the space reserved for his spouse, but he was unmarried.  The judge attributed that mistake to lack of space on the form.

A-0258-16T4

Folcher was not a member of the church, and she would not derive any benefit by testator's bequest to the church.

The judge further recognized an "undue influence theory" was not at issue here. Because the contact between Folcher and testator was "so limited, she [did not] have time to unduly influence [testator]." Rather, Folcher was similar to "a data processor" taking information from testator and putting that information on a form that is sent to Kaehall, which in turn sent it to Faloni.

Ultimately, the judge recognized the process of executing the testamentary documents was "streamlined," and not characterized by a typical in-person meeting at a lawyer's office. Nevertheless, she found there was no evidence in the record to prove "what he intended or what he told [Folcher and Faloni] to do was not ultimately incorporated into those documents that he signed."

Following a subsequent hearing, the trial court granted, in part, plaintiff's motion for counsel fees, finding she had reasonable cause to challenge the will. However, the judge reduced plaintiff's fee application from $89,000 to $10,000. This appeal followed.

On appeal, plaintiff contends: (1) the trial court should have shifted the burden to Trinity Church to prove the will and trust were valid because the existence of a trust marketing scheme

created a conflict of interest for Faloni; (2) the existence of a consumer fraud scheme rendered both documents voidable; (3) the testimony of Folcher and Faloni was not credible; (4) the trial court erred in reducing plaintiff's fee award without evaluating the requisite factors for assessing counsel fees; and (5) the AG should be disqualified from participating on behalf of the charity church in any future hearings because plaintiff has alleged misconduct in the drafting of the will and trust.

## II.

### A.

"A motion for involuntary dismissal is premised 'on the ground that upon the facts and upon the law the plaintiff has shown no right to relief.'" ADS Assocs. v. Oritani Sav. Bank, 219 N.J. 496, 510 (2014) (quoting R. 4:37-2(b)). The "motion shall be denied if the evidence, together with legitimate inferences therefrom, could sustain a judgment in plaintiff's favor." R. 4:37-2(b). "If the court, accepting as true all the evidence which supports the position of the party defending against the motion and according him the benefit of all inferences which can reasonably and legitimately be deduced therefrom, finds that reasonable minds could differ, then the motion must be denied." Id. at 510-11 (citations omitted). "Stated differently, dismissal

is appropriate when no rational [factfinder] could conclude from the evidence that an essential element of the plaintiff's case is present."  Pressler & Verniero, Current N.J. Court Rules, cmt. 2.1 on R. 4:37-2(b) (2018); see also Pitts v. Newark Bd. of Educ., 337 N.J. Super. 331, 340 (App. Div. 2001).  "An appellate court applies the same standard when it reviews a trial court's grant or denial of a Rule 4:37-2(b) motion for involuntary dismissal."  ADS Assocs., 219 N.J. at 511 (citing Fox v. Millman, 210 N.J. 401, 428 (2012)).

"A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference."  Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).  We review a trial court's interpretation and application of the law de novo.  ADS Assocs., 219 N.J. at 511.  Because plaintiff presented insufficient evidence to sustain her burden of proof on her causes of action, here, the trial judge's granting of defendant's motion for an involuntary dismissal was appropriate.

We are guided by well-established principles in will disputes.  We are "enjoined to strain toward effectuating the testator's probable intent to accomplish what he would have done had he envisioned the present inquiry."  In re Estate of Payne,

11

186 N.J. 324, 335 (2006) (citing In re Estate of Branigan, 129 N.J. 324, 332 (1992)). "In any attack upon the validity of a will, it is generally presumed that 'the testator was of sound mind and competent when he executed the will.'" Haynes v. First Nat'l State Bank, 87 N.J. 163, 175-76 (1981) (quoting Gellert v. Livingston, 5 N.J. 65, 71 (1950)).

"If a will is tainted, however, by 'undue influence,' it may be overturned." Id. at 176. So too, "A trust is void to the extent its creation was induced by fraud, duress, or undue influence." N.J.S.A. 3B:31-23. Ordinarily, the opponent of a will bears the burden to prove undue influence. In re Rittenhouse's Will, 19 N.J. 376, 378-79 (1955). However, certain circumstances may create a presumption of undue influence, shifting the burden of proof to the will's proponent. Ibid. Two conditions must be satisfied as a condition precedent to this burden-shifting: (1) a confidential relationship between the testator and a beneficiary; and (2) the presence of suspicious circumstances requiring an explanation. Ibid.

In the present action, plaintiff has not alleged an undue influence theory. Nevertheless, she argues, without any binding legal support, that the same burden-shifting should occur here because the alleged fraudulent scheme by Kaehall created a conflict of interest for Faloni. However, the authority she cites from two

other jurisdictions is distinguishable from the present action where Folcher merely gathered information which was intended for use in a legal document.[5] Folcher did not render advice to testator or plaintiff about creating a will or revocable trust, which were both drafted by Faloni.

Our independent review of the record leads us to the same conclusion as the trial judge. We agree there was no evidence of fraudulent conduct in the procuring of testator's will and trust here. We further agree that the propriety of Kaehall's solicitation was not relevant to the judge's determination.

Rather, testator's intention was clearly expressed in the testamentary documents, which provide for an equal division of his estate between plaintiff and Trinity Church. As the trial judge aptly observed, there has been no showing that Folcher or Faloni is affiliated with Trinity Church, which could implicate a conflict of interest. By contrast, testator was a member of the church, and his bequest is logical where, as here, it did not interfere

---

[5] <u>Comm. on Prof'l Ethics & Conduct v. Baker</u>, 492 N.W.2d 695, 702-03 (Iowa 1992) (reprimanding an attorney for allowing a trust marketing company "to exercise the professional judgment [he] should have exercised"); <u>In re Mid-America Living Tr. Assocs.</u>, 927 S.W.2d 855, 863 (Mo. 1996)(finding the trust marketing companies engaged in the unauthorized practice of law because they "were not merely collecting information to fill in standardized forms" but "they also were giving legal advice to their clients about choices to be made and the legal effects of those choices").

A-0258-16T4

with his intention to provide for his elderly mother from the assets of his substantial estate.

We also are not persuaded by plaintiff's arguments that the trial judge improperly credited the testimony of Folcher and Faloni, who plaintiff claims were hostile witnesses.[6] "[C]redibility findings need not be explicitly enunciated if the record as a whole makes the findings clear." In re Taylor, 158 N.J. 644, 659 (1999) (citing State v. Locurto, 157 N.J. 463, 474 (1999)). Further, we are not free to make our own credibility determination. Locurto, 157 N.J. at 472-75. Although the trial judge did not make specific detailed findings of credibility regarding Faloni, she stated directly that Folcher's criminal history did not affect her credibility in the present case because Folcher did not gain anything from testator's designating Trinity Church as a beneficiary.

We, thus, discern no reason to disturb the trial court's factual and credibility findings. Those findings are entitled to

---

[6] Prior to their testimony, the trial court denied plaintiff's application to treat Folcher and Faloni as hostile witness, pending responses that appeared to be hostile. Plaintiff did not renew her application as to either witness. See N.J.R.E. 611(c) (permitting leading questions "when a witness demonstrates hostility or unresponsiveness").

our deference. See e.g., <u>N.J. Div. of Youth & Family Servs. v. E.P.</u>, 196 N.J. 88, 104 (2008).

Because we find the trial judge properly dismissed plaintiff's complaint, we need not reach her argument that the AG should be disqualified in future proceedings. See <u>Greenfield v. N.J. Dep't of Corr.</u>, 382 N.J. Super. 254, 257-58 (App. Div. 2006) ("An issue is moot when the decision sought in a matter, when rendered, can have no practical effect on the existing controversy." (Citation omitted)).

### B.

We part company, however, with the trial court's award of counsel fees. Ordinarily, "fee determinations by trial courts will be disturbed only on the rarest occasions, and then only because of a clear abuse of discretion." <u>Rendine v. Pantzer</u>, 141 N.J. 292, 317 (1995); <u>see also</u> <u>Packard-Bamberger & Co. v. Collier</u>, 167 N.J. 427, 444 (2001) (citation omitted).

Pursuant to <u>Rule</u> 4:42-9(a)(3), a trial court may grant attorney's fees in probate actions. "When, as here, there is explicit legal authority for the court to award counsel fees, the court calculates the award of counsel fees by determining the 'lodestar,' i.e. a reasonable hourly charge multiplied by the number of hours expended." <u>In re Probate of Will & Codicil of Macool</u>, 416 N.J. Super. 298, 313 (App. Div. 2010) (citing <u>Rendine</u>,

15

141 N.J. at 334-35)). "If probate is granted, and it shall appear that the contestant had reasonable cause for contesting the validity of the will or codicil, the court may make an allowance to the proponent and the contestant, to be paid out of the estate." R. 4:42-9(a)(3).

Initially, although plaintiff did not succeed in challenging the will and trust, the court properly found she was entitled to a fee award. Plaintiff had "reasonable cause for contesting the validity of the will" pursuant to Rule 4:42-9(a)(3), because she claimed testator was the victim of a scam or fraud, and filed a complaint to challenge legal documents drafted as a result of that purported scheme.

The court did not, however, conduct the proper analysis of the fee submitted. In considering the rate submitted, the court should have considered the prevailing market rate in the community and ensured the rate is "fair, realistic, and accurate, or should make appropriate adjustments." Rendine, 141 N.J. at 337; Macool, 416 N.J. Super. at 314 (citation omitted). Pursuant to the New Jersey Rules of Professional Conduct ("RPC"), "[a] lawyer's fee shall be reasonable," and shall be determined by the consideration of a number of factors. RPC 1.5(a); see also R. 4:42-9(b). These factors "must inform the calculation of the reasonableness of a fee award in . . . every case." City of Englewood v. Exxon Mobile

Corp., 406 N.J. Super. 110, 125 (App. Div. 2009) (quoting Furst v. Einstein Moomjy, Inc., 182 N.J. 1, 22 (2004)).

Moreover, "a trial court must analyze [the RPC] factors in determining an award of reasonable counsel fees and then must state its reasons on the record for awarding a particular fee." Furst, 182 N.J. at 21; R. 1:7-4(a) (requiring a trial court to "find the facts and state its conclusions of law thereon in all actions tried without a jury."). "Without the benefit of [such] findings and conclusions, we can only speculate about the reasons for a trial court's decision." S.N. Golden Estates, Inc. v. Cont'l Cas. Co., 293 N.J. Super. 395, 409 (App. Div. 1996) (quoting Rosenberg v. Bunce, 214 N.J. Super. 300, 304 (App. Div. 1986)).

Here, plaintiff sought reimbursement of $89,000 for 243 hours billed at a rate of $350 per hour. In awarding a blanket fee of $10,000, the trial court did not determine the lodestar rate, nor the reasonable amount of hours spent under the circumstances of this action. While the AG argues that award represents forty hours at $250 per hour, there is no indication in the record that the court adopted that rationale.

We recognize in reducing plaintiff's fee award that the court clearly disagreed with the number of hours billed as "more than what would have been required[,]" and determined counsel should have advised plaintiff to cease pursuing the litigation when it

17

became apparent the testamentary documents evinced her son's intent. Arguably, however, the court only considered two of the eight RPC factors. See RPC 1.5(a)(1) and (4).

Based on the foregoing, we are constrained to vacate the August 31, 2016 order awarding counsel fees because of these lack of findings. We remand this issue to the trial court to conduct the required analysis pursuant to RPC 1.5(a), and make the required findings of fact and conclusions of law pursuant to RPC 1:7-4. See Loro v. Colliano, 354 N.J. Super. 212, 227 (App. Div. 2002). We express no opinion about the appropriate fee award.

Affirmed in part, vacated in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0258-16T4