**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4981-16T3

IN THE MATTER OF THE ESTATE
OF ANTHONY F. CORDASCO.

Submitted October 24, 2018 – Decided November 28, 2018

Before Judges Koblitz and Currier.

On appeal from Superior Court of New Jersey, Chancery Division, Morris County, Docket No. P-000979-2016.

Anthony T. Colasanti, attorney for appellant Anthony Cordasco.

Fontanella Benevento Galluccio & Smith, attorneys for respondent Roseann Altiero (Eric W. Smith, on the brief).

PER CURIAM

After Anthony F. Cordasco (decedent) died intestate, his son, Anthony Cordasco (Anthony),[1] instituted suit, seeking appointment as administrator of decedent's estate and an order to invalidate the inter vivos transfer of a

---

[1] We use the parties' first names for clarity and the ease of the reader.

condominium unit to Anthony's sister, decedent's daughter, Roseann Altiero. After a bench trial, Judge Robert J. Brennan found a confidential relationship existed between Roseann and decedent, but there was no undue influence in the transfer of the condominium. We affirm.

Decedent and his wife, Louise, were living in the condominium when Louise became ill in late 2012. The elder Cordascos decided to sell the condominium and move in with Roseann, who intended to care for Louise. As a result, decedent and Louise signed a listing agreement in January 2013 and placed their residence on the market. Louise died on February 17, 2013.

There was initially little market interest in the condominium, and the realtor recommended decedent reduce the price. The decedent agreed and the listing price was dropped from $190,000 to $179,000 on February 24. Three days later, decedent transferred the condominium unit to Roseann for $1.

In the ten days between Louise's death and the transfer of the unit to Roseann, decedent met with an attorney, John Bellush, who had represented the elder Cordascos in their original acquisition of the condominium. Bellush testified he met with decedent and described him as being in clear control of his own mind and well aware of the transaction he wanted to make. Although Roseann had driven her father to the meeting, Bellush stated she was not present

during his discussions with decedent. Thereafter, Bellush prepared a deed transferring decedent's interest in the unit to Roseann. The unit remained on the market. Bellush had also represented Roseann and her husband on several real estate and business matters through the years.

In March 2013, a potential buyer made an offer for the condominium. After a counteroffer from decedent, the buyer and decedent reached a deal and executed a contract. Prior to the closing in May, Roseann and her father signed all of the pertinent documents, including the contract of sale, the deed, and the HUD statements. The net sales proceeds, totaling $160,000, were deposited into a joint account owned by Roseann and her husband.

Anthony did not learn of the inter vivos transfer of the condominium to his sister until after their father's death. He contended decedent told him he received a "good profit" on the unit, and the sales proceeds were deposited in decedent's own bank account. Anthony testified his parents had often stated that upon their deaths, all of their assets would be equally divided between Anthony and Roseann.

After evaluating the evidence, Judge Brennan found that in February 2013, at the time the unit was conveyed, a confidential relationship existed between decedent and Roseann. The judge noted the close relationship between

A-4981-16T3

Roseann and her parents, which included: vacationing together, having twice-weekly dinners with one another, and residing with each other for several periods through the years. Roseann paid for Louise's funeral expenses, and after decedent moved in with her in February, Roseann was responsible for all of her father's food, shelter, and everyday needs.

Contrarily, Judge Brennan found there was no relationship or communication between Anthony and Roseann and very little communication between Anthony and his parents. The communication between Anthony and his father continued to decrease after decedent moved in with Roseann.

In light of the court's finding of a confidential relationship, the burden shifted to Roseann to demonstrate, by clear and convincing evidence, that she did not unduly influence decedent in the transfer of the condominium to her. Judge Brennan found Roseann met her burden, stating: "She has proved clearly and convincingly . . . there was no deception of her father . . . there was no undue influence. . . . [D]ecedent well understood what he was doing." Judgment was entered in favor of Roseann.

On appeal, Anthony argues 1) the court's ruling was unsupported by the credible evidence; 2) the court ignored the evidence concerning decedent's actions of listing the property for sale, reducing the price and signing a contract;

4

and 3) decedent did not understand the consequences of the conveyance to Roseann because he was not represented by disinterested legal counsel.

We are not persuaded by these arguments and affirm substantially for the reasons expressed in Judge Brennan's cogent oral decision. We add only the following brief comments.

> [U]ndue influence is a mental, moral, or physical exertion of a kind and quality that destroys the free will of the testator by preventing that person from following the dictates of his or her own mind as it relates to the disposition of assets, generally by means of a will or inter vivos transfer in lieu thereof.
>
> . . . .
>
> Ordinarily, the burden of proving undue influence falls on the will contestant. Nevertheless, we have long held that if the will benefits one who stood in a confidential relationship to the testator and if there are additional 'suspicious' circumstances, the burden shifts to the party who stood in that relationship to the testator.
>
> [In re Estate of Stockdale, 196 N.J. 275, 302-03 (2008) (first citing Haynes v. First Nat'l State Bank of New Jersey, 87 N.J. 163, 176 (1981); then citing In re Rittenhouse's Will, 19 N.J. 376, 378-79 (1955))].

As Judge Brennan found Roseann had a special relationship with her father, there existed a presumption of undue influence regarding the inter vivos transfer of the condominium, and the judge properly shifted the burden to Roseann to rebut that presumption.

A-4981-16T3

The uncontroverted testimony was that decedent and his wife intended to move into Roseann's home after Louise became ill. The elderly couple had listed their condominium for sale, and decedent had lived with Roseann during Louise's lengthy hospital stay. After Louise died, decedent maintained the plan of selling his home by reducing the price and moving in with his daughter. He was aware Roseann was going to feed and shelter him, and pay for all expenses, including the parents' funeral expenses.

Decedent contacted Bellush, the attorney who had previously represented him in connection with the condominium, and requested he prepare a deed effecting the transfer of the unit to Roseann. Bellush described decedent as "very decided in what he wanted to do. [I] was very comfortable that he understood what he was doing, he realized it was final, and this is what he had chosen to do, and he carried it out." Roseann was not present during decedent's meeting with Bellush. There is no evidence that Bellush represented Roseann at the time of his meeting with decedent and, therefore, no conflict existed.

As Judge Brennan reasoned:

> [After Louise's death,] it was then obvious that [decedent] would be the one living with the daughter and she would have expenses, the funeral, and lasting expenses that she would incur taking care of him. And it is not unreasonable that he would convey the property to her so that she would have the benefit of the sale.

6

We are satisfied the judge's conclusion, that decedent was not unduly influenced by Roseann in the inter vivos transfer of the condominium, was supported by the credible evidence in the record.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4981-16T3