**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0782-24

IN THE MATTER OF THE
ESTATE OF OLGA KOLBIK,
deceased.

_____

Submitted October 28, 2025 – Decided January 12, 2026

Before Judges Sumners and Augostini.

On appeal from the Superior Court of New Jersey, Chancery Division, Middlesex County, Docket No. P-282131.

The Law Office of Robert Nisenson, LLC, attorneys for appellants Sofia Kolbik and Estate of Olga Kolbik (Robert C. Nisenson, on the briefs).

Larisa Kolbik, self-represented respondent.

PER CURIAM

This will contest involves the decedent Olga Kolbik's change to her will, removing one of her two daughters, plaintiff Larisa Kolbik,[1] as a beneficiary of

---

[1] Because the parties share a surname, we refer to them by their first names and intend no disrespect by doing so.

her estate. Larisa filed an action seeking to set aside her mother's 2016 will, contending it was not properly executed. Olga's other daughter, defendant Sofia Kolbik, was named as the executor and sole beneficiary of Olga's estate. Following a bench trial, the court entered a July 17, 2024 judgment in favor of Larisa, invalidating the 2016 will as the product of undue influence by Sofia, and granting Larisa's request to have the 2002 will probated.

Sofia appeals from the final judgment and from the November 7, 2024 order denying her motion for a new trial. She contends the trial court erred factually and legally in finding undue influence—a claim not pled by Larisa in her complaint—as the basis to invalidate the 2016 will, and further asserts that the court erred by not granting a new trial to afford her an opportunity to respond to the undue influence claim. Because Sofia was not given adequate notice of the undue influence claim, the court's factual findings were inadequate, and it erred in its legal conclusions, we vacate the final judgment and remand for a new trial for the reasons that follow.

## I.

A one-day bench trial was held on May 28, 2024, revealing the following facts.

A-0782-24

Olga passed away on March 5, 2023. She had two daughters, Larisa and Sofia. In 2002, Olga executed a last will and testament, dividing her estate equally between her daughters.

In 2006, Larisa purchased a home against the advice of her mother, who was concerned about Larisa's ability to afford a home. Approximately a year later, Larisa experienced financial difficulties, and without Olga's consent, withdrew a substantial sum of money from her mother's account. Upon receiving the account's annual statement, Olga learned of the unauthorized withdrawal. According to Sofia, Olga was "distraught" and "could not understand [why] her daughter [w]ould do this to her." Larisa did not return the funds to her mother.

In 2015, Larisa needed money again because her home was in foreclosure. In January 2015, Olga distributed bonds to her daughters she had purchased. The maturation dates of the bonds varied. Because Larisa needed money, Sofia offered to exchange the bonds given to her that had already matured for ones given to Larisa that had not yet matured. According to Sofia, the redeemed value of the matured bonds was $135,698. Larisa agreed to sign over the bonds to Sofia once they matured in 2017.

A-0782-24

Since 2006, Olga and Larisa's relationship was strained. In May 2016, Olga contacted Larisa to see if she would be coming for Easter, to which Larisa stated she would not. However, Sofia testified that Larisa "showed up, hardly spoke to anybody, [and] left shortly thereafter." Larisa did not show up the following weekend for Mother's Day.

Sofia testified that after that weekend, Olga asked her to "call my lawyer," to change her will. Sofia testified that she did not immediately contact the attorney; however, on her next visit to her mother's home, Olga's "first words" to her were "did you call the lawyer?" Olga requested that Sofia "go right now and call the lawyer." She contacted Robert Rafano, Esq., who had drafted Olga's 2002 will, and scheduled an office appointment.

On May 12, 2016, Rafano met with Olga and Sofia in his office to discuss creating a new will. Rafano testified that Olga explained that she had "done things for [Larisa] during her lifetime and she would be taken care of[;]" therefore, she wanted to "eliminate Larisa from [her] will." Rafano testified that he was able to communicate with Olga.

Five days later, Rafano prepared a memo to the file, memorializing the May 12, 2016 meeting with Olga and noted these recommendations:

> I advised them to have her examined by a doctor since she is [ninety] years old and there may be a contested

case of her [w]ill and also suggested that they have a Russian interpreter here, a person or friend who speaks Russian so that I can review this in detail with her not having to use the daughter as an interpreter.

Rafano sent Olga a copy of the draft will on May 17, 2016. Approximately two weeks later, Olga returned to Rafano's office to execute the will. Rafano testified that he reviewed the will again with Olga before it was signed. Concerning Larisa, the will stated:

> SECOND: I recognize the existence of my daughter, Larisa Kolbik, (capitalization modified) and direct that she not share in the proceeds of my estate in any way. She has received benefits from my assets during my lifetime.

Rafano testified that Olga fully understood the terms of the will and it was properly witnessed and executed.

On cross-examination, Rafano acknowledged that he accepted a note dated May 16, 2016 from Olga's cardiologist, Dr. Y.M. Lawrence Chai, confirming that on her last visit, January 15, 2016, Olga "was her normal self and appeared competent to make decisions." According to Dr. Chai, Olga has "made appropriate decisions to various medical issues that have come up over the last [twelve] years."

Rafano explained that although he was "satisfied that she was competent," he thought a medical examination by the doctor "would be helpful" given Olga's

5

age. Nonetheless, once he reviewed Dr. Chai's note, Rafano was "satisfied with what [he] received" and did not request further evaluation. Rafano did not hear back from Olga after completing the 2016 will.

On July 17, 2024, the court issued a final judgment, finding the 2016 will subject to undue influence, probating the 2002 will, turning over the thirty bonds to Sofia,[2] and denying Larisa's request for compensatory damages. In its written statement of reasons, the court inferred from the evidence that Olga and Sofia had a confidential relationship, finding that:

> her presence with Mr. Rafano when the [w]ills which he prepared both in 2002 and 2016 suggest strongly that undue influence over decedent affected decedent's testamentary dispositions, even though decedent apparently had become estranged from Larisa by virtue of Larisa's conduct for some time.

As a result, the court shifted the burden of proof to Sofia to rebut the presumption of undue influence. It determined that "Sofia ha[d] not met her burden of proof to show by clear and convincing evidence the absence of suspicious circumstances."

Following the court's decision, Sofia filed a motion for a new trial, arguing that the lack of notice of undue influence in the pleadings deprived her of the

---

[2] The provision of the July 17, 2024 order pertaining to the turnover of the thirty bonds is not being challenged on appeal.

A-0782-24

opportunity to present evidence to refute the undue influence claim. In denying the motion for a new trial, the court, citing Jorden v. Reed, 77 N.J.L. 584 (E. & A. 1908), noted the "variance between pleadings and the evidence at trial is of no great consequence." The court also pointed out that no objection to the evidence supporting undue influence was made at trial. This appeal followed.

II.

Our standard of review of a judgment following a bench trial is well-settled. "The trial court's factual findings are entitled to deference on appeal so long as they are supported by sufficient credible evidence in the record." Accounteks.Net, Inc. v CKR Law, LLP, 475 N.J. Super. 493, 503 (App. Div. 2023) (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 483-84 (1974)). Although the court's credibility determinations are entitled to deference, the "trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference" and are reviewed de novo on appeal. Rowe v. Bell & Gossett Co., 239 N.J. 531, 552 (2019) (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

A-0782-24

A.

We first address Sofia's contention that she was deprived notice of the claim for undue influence because it was not pled in the complaint. A complaint alleging undue influence, "must on its face[] satisfy the requirements of Rule 4:5-8." State, Dep't of Treasury, Div. of Inv. ex rel. McCormac v. Qwest Commc'ns Intern, Inc., 387 N.J. super. 469, 484 (App. Div. 2006). "The heightened [undue influence] pleading requirements set forth in the Rule provide the 'particulars of the wrong, with dates and items if necessary, shall be stated insofar as practicable.'" Ibid. (quoting R. 4:5-8(a)). Failure to state such allegations with requisite particularity may be grounds for dismissal of the claim. Ibid.

A will contestant has the burden of proving undue influence unless "the will benefits one who stood in a confidential relationship to the testatrix and there are additional circumstances of a suspicious character present which require explanation." In re Will of Rittenhouse, 19 N.J. 376, 378-79 (1955). "When there is a confidential relationship coupled with suspicious circumstances, undue influence is presumed and the burden shifts to the will proponent to overcome the presumption." In re Est. of Folcher, 224 N.J. 496, 512 (2016) (quoting In re Est. of Stockdale, 196 N.J. 275, 303 (2008)). Undue

A-0782-24

influence exists when "mental, moral, or physical exertion of a kind and quality that destroys the free will of the testator by preventing that person from following the dictates of his or her own mind as it relates to the disposition of assets." Stockdale, 196 N.J. at 302-03.

There is no dispute that Larisa's complaint did not allege undue influence by Sofia. Larisa contends she posed the question of undue influence in one of her interrogatories and raised it substantively for the first time in her trial brief submitted shortly before trial. However, Larisa did not seek to amend her complaint to include this claim. Indeed, during trial, she admitted that when she filed her complaint, she "didn't really know anything about it." Moreover, after she raised it in her pre-trial submission, she did not provide any specific allegations of undue influence her sister may have had over their mother; instead, she generally asserted her belief that Sofia "had more influence over [their] mother." Nor did Larisa call any witnesses to show Olga's susceptibility to Sofia's influence.

The lack of notice in Larisa's complaint deprived Sofia of the opportunity to conduct discovery relevant to this claim and to properly prepare and present a defense to this allegation. This notice deficiency was particularly prejudicial

9

because the trial court shifted the burden to Sofia of showing "by clear and convincing evidence" the absence of suspicious circumstances.

Based on our de novo review, we conclude that the lack of notice not only fails to satisfy the "heightened" pleading requirements of Rule 4:5-8, but more fundamentally, fails to satisfy essential components of due process—"notice of the nature of the proceeding and a fair opportunity to be heard therein." Borough of Keyport v. Maropakis, 332 N.J. Super. 210, 221 (App. Div. 2000) (quoting Weiner v. County of Essex, 262 N.J. Super. 270, 287 (Law Div. 1992)).

B.

For completeness, we address Sofia's additional contentions that the trial court erred factually and legally in finding undue influence. The first issue to be determined by the court was whether Sofia and Olga had a confidential relationship. Haynes v. First Nat'l State Bank, 87 N.J. 163, 176 (1981). The court determined that:

> [t]he evidence clearly shows that a confidential relationship existed between Sofia and decedent, child and parent, beyond the close biological connection. Sofia was decedent['s] primary caretaker. Larisa and decedent had not spoken for a number of years prior to 2023. Her presence with Mr. Rafano when the [w]ills which he prepared both in 2002 and 2016 suggest strongly that undue influence over decedent affected decedent's testamentary dispositions, even though

A-0782-24

decedent apparently had become estranged from a Larisa by virtue of Larisa's conduct for some time.

The trial court next addressed suspicious circumstances:

> Sofia testified that the relationship between Larisa and decedent had been 'extremely strained' since 2006, when Larisa apparently withdrew $104,000 from decedent's bank accounts. Physical contact between decedent and Larisa had been limited; when Larisa failed to visit decedent on Mother's Day 2016, decedent decided to call Mr. Rafano. The facts leading to decedent's alienation with Larisa justifies the characterization of the circumstances regarding the 2016 will as 'suspicious' in accordance with Haynes, 87 N.J. at 163 and Rittenhouse, [19 N.J. at 379] [Sofia] did not meet her revised burden of proof to show by clear and convincing evidence the absence of suspicious circumstances.

We recognize that "parent-child relationships [are] 'among the most natural of confidential relationships,' it has also been held that the 'mere existence of family ties does not create . . . a confidential relationship.'" Est. of Ostlund v. Ostlund, 391 N.J. Super. 390, 401 (App. Div. 2007) (citing Vezzetti v. Shields, 22 N.J. Super. 397, 405 (App. Div. 1952)). "[T]he test for measuring the existence of a confidential relationship is 'whether the relations between the parties are of such a character of trust and confidence as to render it reasonably certain that the one party occupied a dominant position over the other and that consequently they did not deal on terms and conditions of equality.'" Ibid.

A-0782-24

(quoting Blake v. Brennan, 1 N.J. Super. 446, 454 (Ch. Div. 1948)).  In other words, a confidential relationship "exists when the circumstances make it certain that the parties do not deal on equal terms."  Ibid.  (quoting Stroming v. Stroming, 12 N.J. Super. 217, 224 (App. Div. 1951)).

In the present case, the court's findings that Sofia was Olga's primary caregiver and that Larisa and Olga were alienated from one another does not adequately support the finding of a confidential relationship between Olga and Sofia.  See R. 1:7-4(a); Haynes, 87 N.J. at 175-76 ("'Undue influence' has been defined as 'mental, moral or physical' exertion which has destroyed the 'free agency of a testator'").  However, even assuming a confidential relationship between Olga and Sofia existed, before "undue influence is presumed and the burden of proof shifts to the will proponent to overcome the presumption," Folcher, 224 N.J. at 512 (quoting Stockdale, 196 N.J. at 303), the trial court had to find suspicious circumstances surrounding Sofia being named sole beneficiary of her mother's estate.  The court described that, "[t]he facts leading to decedent's alienation with Larisa justifies the characterization of the circumstances regarding the 2016 will as 'suspicious.'"  In light of the record, we conclude that these findings, without more, do not support the trial court's conclusion of suspicious circumstances.

A-0782-24

Although evidence of suspicious circumstances may be "slight," the will contestant must present "additional circumstances of a suspicious character [] which require explanation." Rittenhouse, 19 N.J. at 378-79. Here, the circumstances that led to the change in Olga's testamentary disposition were undisputed and needed no further explanation; Larisa "received benefits from [Olga's] assets during [her] lifetime," namely, a withdrawal of approximately $104,000 from Olga's accounts. It is also undisputed that Larisa never offered to repay these monies; a position the trial court found "incredible." In terms of credibility, the court found Sofia highly credible, while Larisa's answers "were less than fully responsive." Despite the court's credibility and factual findings, it failed to adequately explain why it found these circumstances "suspicious."

Without adequate findings of both a confidential relationship and suspicious circumstances, the trial court erred in shifting the burden to Sofia to prove that the 2016 will was not the product of undue influence. Moreover, the court incorrectly applied the higher legal standard of clear and convincing evidence to Sofia's obligation to show the absence of suspicious circumstances. Had the record supported both the establishment of a confidential relationship and suspicious circumstances, warranting burden shifting to Sofia, she would have had to prove, by a preponderance of the evidence, that the 2016 will was

13

not the product of undue influence. <u>Folcher</u>, 224 N.J. at 512 (finding the burden of proof can be overcome based on proof of no undue influence by a preponderance of the evidence). The trial court offered no explanation as to why the heavier burden of clear and convincing evidence was applied in this case. <u>Cf.</u> <u>Haynes</u>, 87 N.J. at 185.

In sum, we are satisfied that the lack of adequate notice of a claim of undue influence deprived Sofia of a fair hearing. We also conclude the trial court failed to adequately state its factual findings to support a confidential relationship and the existence of suspicious circumstances surrounding the 2016 will. Further, the trial court erred in its legal conclusions by requiring Sofia to prove by clear and convincing evidence no undue influence. Because we vacate the July 17, 2024 final judgment and remand for a new hearing, we need not reach the issue of whether the court erred in denying Sofia a new trial.

Considering the trial court made credibility findings, the matter should be remanded to a different trial court. <u>See</u> <u>P.T. v. M.S.</u>, 325 N.J. Super. 193, 220-221 (App. Div. 1999); <u>see also</u> <u>R.</u> 1:12-1.

Vacated and remanded for a new hearing before a different trial court. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

_M.C. Harley_

Clerk of the Appellate Division

A-0782-24