**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-2901-17T1
A-2926-17T1

IN THE MATTER OF THE
ESTATE OF LEOKADIA JENSEN,

    Deceased

_____

Submitted October 7, 2019 – Decided January 30, 2020

Before Judges Geiger and Natali.

On appeal from the Superior Court of New Jersey, Chancery Division, Morris County, Docket No. P-0299-2016.

Robert James Stack, attorney for Lisa Brewer, appellant in A-2091-17 and respondent in A-2926-17.

Jay J. Freireich, attorney for Roberta Gannon, appellant in A-2926-17 and respondent in A-2901-17.

Donnelly Minter & Kelly, LLC, attorneys for respondent The Estate of Leokadia Jensen (Patrick B. Minter, of counsel and on the briefs; Thomas J. Coffey and Christopher J. Trofimov, on the briefs).

McElroy, Deutsch, Mulvaney & Carpenter, LLP, attorneys for respondents Interfaith Food Pantry and

Morris County Women's Republican Club, join in the brief of respondent The Estate of Leokadia Jensen.

Sherman Wells Sylvester & Stamelman, LLP, attorneys for respondents Jersey Battered Women's Service Inc., join in the brief of respondent The Estate of Leokadia Jensen.

Posner & Kramer, LLP, attorneys for respondent The Salvation Army, join in the brief of respondent The Estate of Leokadia Jensen.

Foley & Lardner, LLP, attorneys for respondent Hillsdale College, join in the brief of respondent The Estate of Leokadia Jensen.

Riker Danzig Scherer Hyland Perretti, LLP, attorneys for respondent Otterbein University, join in the brief of respondent The Estate of Leokadia Jensen.

Michael F. Rehill, attorney for respondent St. Peter's Episcopal Church, joins in the brief of respondent The Estate of Leokadia Jensen.

PER CURIAM

These appeals arise from a will contest. In A-2901-17, plaintiff Lisa Brewer appeals from Chancery Division orders: (1) dismissing her amended complaint with prejudice for failure to state a claim upon which relief can be granted pursuant to Rule 4:6-2(e); (2) denying reconsideration of the dismissal; (3) denying her application for an award of attorney's fees; and (4) denying reconsideration of the denial of her counsel fee application. In A-2926-17,

proposed intervener Roberta Gannon appeals from orders denying her motion to intervene as moot and denying reconsideration. We consolidate these appeals and issue a single opinion. We affirm as modified by this opinion.

I.

Because Brewer's appeal is from a dismissal of her amended complaint pursuant to Rule 4:6-2(e), we base our review on the facts alleged in the amended complaint and the will executed by decedent Leokadia Jensen in 2013. See Banco Popular N. Am. v. Gandi, 184 N.J. 161, 183 (2005) ("In evaluating motions to dismiss, courts consider 'allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim.'" (citation omitted)). We view the facts in a light most favorable to Brewer and afford her all reasonable inferences. See Pressler & Verniero, Current N.J. Court Rules, cmt. 4.1.1 on R. 4:6-2(e) (2020).

According to the complaint, Brewer and Gannon were decedent Leokadia Jenson's only children. Decedent suffered from physical infirmities, limiting her to verbal commands toward the end of her life. Decedent was "blind and entirely reliant upon others to assist her in her most basic functions." Decedent "relied solely upon" defendant Anthony M. Bucco, an attorney, "for her legal issues." She passed away at the age of ninety on January 17, 2016.

Decedent was "frugal" and had accumulated significant savings during her life. Near the end of her life she told Brewer that "she was worth approximately $2,500,000." Decedent was otherwise "extremely secretive and private concerning her finances."

Decedent executed a living will that named Brewer as her medical representative. Nevertheless, "on a few occasions, [decedent] threatened to take [Brewer] out of her will."

On October 2, 2013, decedent executed a will (the 2013 Will) prepared by defendant that expressly disinherited Brewer "because of an argument [Brewer's] husband and [decedent] had about [the] family dog." The 2013 Will also expressly disinherited Gannon. Decedent and Brewer "reconciled shortly thereafter." Defendant kept possession of the original of the 2013 Will; decedent was not given a copy or access to it.

In August 2015, decedent, along with her home health aide, Kristen Colavito, began contacting defendant regarding changes decedent wanted to make to the 2013 Will. Thereafter, decedent sent defendant a notarized instruction that Brewer was to receive the contents of decedent's Franciscan Oaks apartment. In addition, decedent notified defendant that "she did not want her old will in effect."

4

Despite these repeated requests, defendant did not prepare a revised will until early December 2015 and did not present it to decedent until January 9, 2016, when decedent was in hospice care. Defendant claimed decedent did not execute the updated will (the 2016 Draft) because she wanted to revise it by adding an unborn future grandchild as an additional beneficiary. Defendant knew of decedent's desire to add the additional beneficiary "since December 2015."

The following week, defendant ignored repeated calls from Colavito who, at decedent's request, attempted to inform defendant that "[decedent] was dying and needed to sign the will 'making sure [Brewer] was taken care of for life.'" Decedent "died the day after the last call," on January 17, 2016.

On January 29, 2016, defendant applied to the Morris County Surrogate to probate the 2013 Will. That same day, the Surrogate admitted the 2013 Will to probate and issued letters testamentary to defendant.

On May 31, 2016, Brewer filed a complaint in the Probate Part against defendant in his capacity as executor of the Estate of Leokadia Jensen (the Estate). Two days later, Brewer filed a six count amended complaint.

Count one alleged the 2013 Will contains a forged signature of the decedent, noting the decedent's signatures on pages four and five of the 2013 Will are "substantially dissimilar" thereby "call[ing] into question the validity of the

signature." In addition, Brewer and Colavito "are highly familiar with [decedent's] signature and deny that the signature on page [four] of the 2013 Will is that of [decedent]." Brewer sought appointment of a handwriting expert to issue an expert opinion as to the validity of the signatures on the 2013 Will.

Count two alleged the 2016 Draft is valid under N.J.S.A. 3B:3-2 and -3 and should be deemed to be decedent's will, stating:

> 24. On or about January 9, 2016, [decedent] was presented with [the 2016 Draft] which reflected her wishes and was substantially different from a previous will in that it included her caregiver and daughter as a beneficiary.
>
> 25. [Decedent] was blind at this time[,] was not able to write and needed help with every conceivable chore or task, including signing a document.
>
> 26. [Decedent] had expressed that her desire to include her daughter Lisa Brewer in her will to her attorney Anthony Bucco on multiple occasions since August 2015; to her daughter, Lisa Brewer, on multiple occasions since August 2015; and to her home health aide Kristen Colavito on multiple occasions since August 2015.
>
> 27. [Decedent] was read the contents of the [2016 Draft] which included her daughter Lisa Brewer as beneficiary and verbally agreed to its contents to her attorney Anthony Bucco. In addition to agreeing to the contents of [the 2016 Draft], [decedent] requested the addition of her unborn grandchild as a beneficiary.

A-2901-17T1

28. Despite not having signed the [2016 Draft], at the moment of her verbal assent, this document became her expression of her desires for her estate and meets the requirements as set forth in N.J.S.A. 3B:3-2 for a holographic will.

Count three alleged decedent verbally revoked the 2013 Will under the following circumstances:

30. [Decedent's] attorney kept the original of her 2013 Will and [decedent] was not given a copy nor did she have access to said 2013 Will. As such [decedent] was not able to destroy or otherwise physically revoke her 2013 Will.

31. As [decedent] was blind and bedridden and required help and assistance in all ordinary tasks, and was limited solely to verbal commands, her verbal revocation of her 2013 Will to her daughter Lisa Brewer, her home health aide Kristen Colavito [and] her attorney Anthony Bucco, constitute a revocation for purposes of N.J.S.A. 3B:3-13.

Count four alleged defendant exerted undue influence over the decedent by engaging in the following conduct: (1) keeping the 2013 Will at his office despite knowing decedent wished to revoke the will, thereby "depriving [decedent] of the ability to revoke [the] will in the traditional manner or in any other manner remotely possible," (emphasis omitted); (2) "purposefully failing to return [decedent's] phone calls," thwarting her "efforts to execute a new will naming her daughter Lisa Brewer as an heir;" (3) informing his long-time client that he had completed her will in

A-2901-17T1

December 2015, but failing to present it to decedent until she "was on her death bed"; (4) appearing at decedent's hospital death bed with the 2016 Draft that substantially changed her previous will by adding Brewer as a beneficiary, "yet he did not complete the will with her signature, instead leaving her bedside for a de minimis change, which in fact was pretense to further his undue influence;" and (5) by promising to return with the will "post haste" and ignoring "repeated exaltations and phone calls that [decedent] was about to die."

Count five alleged defendant committed fraud by engaging in the following conduct. In the months leading up to decedent's death, defendant told her he would take care of her will while having no intention of doing so. In the days before her death, defendant was aware decedent was gravely ill and promised her to return quickly with her will, but had no intention of doing so. Defendant was also aware decedent would rely on his statements and it was reasonable for her to do so. Count six alleged defendant committed legal malpractice.[1]

On June 21, 2016, the Morris County Surrogate ordered defendant as Executor of the Estate to show cause why: (1) the 2013 Will should not be revoked; (2) the Executor should not be barred from distributing any estate assets or paying any bills;

---

[1] Count six was voluntarily dismissed without prejudice by stipulation of dismissal. Accordingly, we do not address the count six in this opinion.

(3) the Letters Testamentary issued to defendant should not be revoked; (4) the unsigned 2016 Draft should not be deemed decedent's Last Will and Testament and admitted to probate; and (5) decedent should not be determined to have died intestate in the event no will of the decedent is admitted to probate.

In July 2016, the Estate moved to dismiss Brewer's complaint for failure to state a claim upon which relief may be granted. Gannon moved to intervene. The Estate opposed Gannon's motion. More than one year later, on August 4, 2017, the chancery judge dismissed Brewer's amended complaint, finding certain counts time-barred and all counts (even if timely) failed to state a claim upon with relief can be granted. The judge also dismissed Gannon's motion for leave to intervene and file a counterclaim as moot since the underlying complaint was dismissed.

In his written Statement of Reasons, the motion judge noted decedent began hospice care on December 17, 2015. She fell, suffered a fractured pelvis, and was hospitalized on January 13, 2016. She was then transferred to Franciscan Oaks Rehabilitation Center, where she died on January 17, 2016. The judge explained that Rule 4:85-1 requires complaints contesting a probated will to be filed within four months after probate. Here, the complaint was filed on May 31, 2016, slightly beyond four months after the will was admitted to probate on January 29, 2016. The

judge concluded that counts one, two, and three of the complaint, which challenged admission of the will to probate, were time-barred.

The motion judge also found that counts one, two, and three failed to adequately state a cause of action. Count one alleged decedent's signature on page four of the 2013 Will was forged, stating that her signature on page four is "substantially dissimilar" from her signature of page five. The judge noted the 2013 Will has no page five. He found the 2013 Will was executed in accordance with N.J.S.A. 3B:3-4, and thereby self-proving. The judge noted the amended complaint admitted decedent had written Brewer out of the 2013 Will and suggested she intended to execute the 2013 Will. Despite this, Brewer still alleged it was incorrectly admitted to probate because the decedent had subsequently revoked it. The judge concluded Brewer failed to plead the necessary elements to set aside the probated self-proving 2013 Will.

Count two alleged the unexecuted 2016 Draft should be admitted to probate. The judge noted that in order to meet the clear and convincing standard for a writing to be considered a will under N.J.S.A. 3B:3-3, the proponent must prove that the decedent actually reviewed the will and thereafter gave her final assent to it. The judge found Brewer did not plead and could not establish that decedent gave her final assent to the 2016 Draft because decedent told defendant she still wanted to

include her unborn grandchild as an additional beneficiary. The judge also found the 2016 Draft "does not meet the requirements of a holographic will, as it was not drafted in [d]ecedent's own hand or signed by [d]ecedent." Accordingly, he found count two failed to state a cause of action.

Count three alleged decedent revoked the 2013 Will. The motion judge noted "a will can be revoked by either executing a subsequent will that revokes the prior will expressly or by inconsistency," or by the performance of a revocatory act with the intent and for the purpose of revoking the will, such as "burning, tearing[,] cancelling, obliterating or destroying the will or any part of it," quoting N.J.S.A. 3B:3-13(b) The judge found Brewer's claim of verbal revocation failed as a matter of law since the decedent did not execute a subsequent will that revoked the 2013 Will, and "did not physically perform a revocatory act on the 2013 Will with an intent to revoke it." Therefore, count three failed to state a claim upon which relief can be granted.

Count four alleged defendant exerted undue influence. The motion judge found the amended complaint did not assert defendant "used any mental, moral or physical exertion to overcome the free agency of [d]ecedent." Rather, the amended complaint alleged that when defendant presented a revised will on January 9, 2016, decedent requested further revisions. The judge concluded

11

Brewer "cannot sufficiently state a cause of action for undue influence based solely on the allegation that [defendant] did not return with a revised will prior to [d]ecedent's passing eight days later." Accordingly, count four was dismissed.

Count five alleged defendant committed fraud by misrepresenting an intent to promptly revise decedent's will, with knowledge of decedent's illness, despite having no intention to return promptly with the revised will. Brewer further alleged defendant knew decedent would rely on his statements, such reliance was reasonable, thus harming the Estate and intended beneficiaries. The motion judge found Brewer could not establish defendant made any material misrepresentations to decedent of any present or past fact. The judge noted defendant did return with a revised will within the following eight days and his statement to decedent that he would return with a further revised draft, "is not a material misrepresentation of a present or past fact, but a declaration of a future intent." Moreover, Brewer did not allege defendant "misstated any exact timeframe within which he would return and failed to do so." The judge concluded that even if defendant had done so, "such statement would not be a material misrepresentation of a past or present fact." Accordingly, count five was dismissed.

The motion judge also dismissed count six alleging defendant committed legal malpractice. Ultimately, each count of the amended complaint was dismissed with prejudice.

In the interim, Gannon moved to intervene. While acknowledging she was otherwise time-barred, she argued that she could interplead. She contended her interests in the case are substantially aligned with Brewer's, and as such, her cause of action is preserved through Brewer's timely filing. Gannon also sought leave to file an amended complaint. The motion judge dismissed Gannon's motion to intervene. He noted Gannon sought admission of a 1992 Will that would not disinherit her. Gannon's attempt to file a counterclaim was deemed out-of-time as an independent filing and procedurally incorrect.

The judge noted Gannon filed her application to intervene on May 23, 2017, well out-of-time even for out-of-state residents under Rule 4:85-1. The judge characterized Gannon's attempt at intervention as "an attempt to enter the case through a 'back door,' avoiding the time limitations of [Rule] 4:85-1." The judge also concluded Gannon's claims were not aligned with Brewer's. Instead, he found:

> The respective relief sought by [Brewer] and Gannon are profoundly different, and ultimately prejudicial to one another. Therefore, allowing Gannon to proceed by allowing her to initiate an entirely new, and untimely action would be extremely prejudicial to [defendant].

Furthermore, her intervention is entirely moot because [Brewer's] complaint is herein dismissed.

Brewer moved for reconsideration. She argued her claims were not time-barred and dismissal with prejudice was error because she should have been granted leave to re-amend her complaint. She further argued that dismissal of count six was error since the parties had previously stipulated to dismiss that count without prejudice. The motion judge concluded Brewer's claims were not time-barred because the four-month filing period ended during Memorial Day weekend. Therefore, the complaint was timely filed on May 31, 2016. Nevertheless, the judge determined Brewer failed to state a cause of action as to counts one through five and denied reconsideration. The judge also rejected Brewer's argument that defendant's association with a charitable beneficiary of the 2013 Will, which would have been disinherited under the 2016 Draft, motivated defendant not to allow decedent to execute the 2016 Draft. Likewise, the judge found the amended complaint fell "woefully short" of meeting the requirement that fraud be pleaded with particularity. The judge acknowledged that the parties had voluntarily stipulated to the dismissal of count six without prejudice.

In March 2018, Brewer appealed. Three months later she moved for an award of attorney's fees and costs pursuant to Rule 4:42-9(a)(3). We remanded the case to the trial court to decide Brewer's counsel fee application. The chancery judge denied

14

the fee application as untimely because it was not filed within twenty days as required by Rules 4:42-9(d) and 4:49-2.

Brewer moved for reconsideration. Although conceding her counsel fee application was untimely, she argued the court should reconsider her application because other judges had permitted untimely fee applications in unrelated and unreported cases. Both the Estate and the Attorney General, in his parens patriae capacity, opposed reconsideration. The judge noted Brewer did "not claim that the [c]ourt failed to consider or appreciate probative, competent evidence, or bring to the [c]ourt's attention any new or additional information which [she] could not have provided on the first application." The judge also found Brewer had not produced "a single credible reason as to why her application was dilatory for an interests of justice analysis." The judge found the delay was "excessive by any standard" and "especially egregious" since at least five other attorneys involved in the case had filed timely fee applications. For these several reasons, the judge denied reconsideration.

These appeals followed. In A-2901-17, Brewer raises the following points:[2]

POINT I

THE COURT ERRED IN DISMISSING PLAINTIFF'S CLAIMS WITH PREJUDICE. THE COMPLAINT

---

[2] For purposes of clarity and brevity, we have edited plaintiff's point headings.

SET FORTH CLAIMS UPON WHICH RELIEF CAN BE GRANTED. DISMISSAL SHOULD NOT HAVE BEEN CONSIDERED BEFORE DISCOVERY WAS ALLOWED. ANY DISMISSAL SHOULD HAVE BEEN WITHOUT PREJUDICE.

POINT II

THE COURT ERRED BY NOT FINDING A PRESUMPTION OF UNDUE INFLUENCE EXISTED AND FAILING TO SHIFT THE BURDEN OF PROOF TO DEFENDANT.

POINT III

THE COURT ERRED BY NOT FINDING THE 2013 WILL WAS FORGED AND FRAUDULENTLY WITHHELD FROM DECEDENT.

POINT IV

THE COURT ERRED BY IGNORING A CONFLICT OF INTEREST, ACTS OF ELDER ABUSE, CRIMINALITY, AND THE APPEARANCE OF BIAS BECAUSE IT WAS BIASED. ANY FURTHER PROCEEDINGS SHOULD BE VENUED OUTSIDE OF MMMORRIS COUNTY.

POINT V

THE COURT BELOW ABUSED ITS DISCRETION IN DENYING PLAINTIFF ATTORNEY'S FEES.

In A-2926-17, Gannon raises the following points: (1) dismissal was premature; (2) if dismissal was appropriate, it should have been without prejudice; and (3) denying intervention was error.

16

## II.

"In considering a motion to dismiss under <u>Rule</u> 4:6-2(e), courts search the allegations of the pleading in depth and with liberality to determine whether a cause of action is 'suggested by the facts.'" <u>Rezem Family Assocs. v. Borough of Millstone</u>, 423 N.J. Super. 103, 113 (App. Div. 2011) (quoting <u>Printing Mart-Morristown v. Sharp Elecs. Corp.</u>, 116 N.J. 739, 746 (1989)). Courts must "ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim, opportunity being given to amend if necessary." <u>Printing Mart-Morristown</u>, 116 N.J. at 746 (citation omitted). "At this preliminary stage of the litigation the [c]ourt is not concerned with the ability of plaintiffs to prove the allegation contained in the complaint. For purposes of analysis plaintiffs are entitled to every reasonable inference of fact." <u>Ibid.</u> (citations omitted).

"On appeal, we apply a plenary standard of review from a trial court's decision to grant a motion to dismiss pursuant to <u>Rule</u> 4:6-2(e)." <u>Rezem Family Assocs.</u>, 423 N.J. Super. at 114 (citation omitted). "We owe no deference to the trial court's conclusions." <u>Ibid.</u>

## III.

We begin our analysis by noting the parties engaged in protracted settlement efforts that proved unsuccessful. They did not commence discovery before the

dismissal motion was filed and decided. A motion to dismiss under Rule 4:6-2(e) "may not be denied based on the possibility that discovery may establish the requisite claim; rather, the legal requisites for plaintiffs' claim must be apparent from the complaint itself." Edwards v. Prudential Prop. & Cas. Co., 357 N.J. Super. 196, 202 (App. Div. 2003) (citation omitted).

"Ordinarily, a dismissal for failure to state a claim is without prejudice." Pressler & Verniero, cmt. 4.1.1 on R. 4:6-2(e); see Printing Mart-Morristown, 116 N.J. at 772 (noting "barring any other impediment . . . the dismissal should be without prejudice to a plaintiff's filing of an amended complaint"). Dismissal with prejudice is appropriate, however, if provision of an opportunity to amend would be futile. Johnson v. Glassman, 401 N.J. Super. 222, 246-47 (App. Div. 2008)

A.

Count two alleges the 2016 Draft is a valid will because decedent verbally assented to the contents of such document and, therefore, satisfied the statutory requirements for a holographic will under N.J.S.A. 3B:3-2(b) and a will under N.J.S.A. 3B:3-3.

N.J.S.A. 3B:3-2 sets forth the requirements for execution of a traditional will and a holographic will. To be admitted to probate, a holographic will requires "the signature and material portions of the document" be "in the testator's handwriting."

N.J.S.A. 3B:3-2(b); see also In re Probate of Will & Codicil of Macool, 416 N.J. Super. 298, 311 (App. Div. 2010). A document "is treated as if it had been executed in compliance" with N.J.S.A. 3B:3-2 if the proponent of such document:

> establishes by clear and convincing evidence that the decedent intended the document or writing to constitute: (1) the decedent's will; (2) a partial or complete revocation of the will; (3) an addition to or an alteration of the will; or (4) a partial or complete revival of his formerly revoked will or of a formerly revoked portion of the will.
>
> [N.J.S.A. 3B:3-3.]

For a writing to be admitted into probate as a will,

> the proponent of the writing must prove, by clear and convincing evidence, that: (1) the decedent actually reviewed the document in question; and (2) thereafter gave his or her final assent to it. Absent either one of these two elements, a trier of fact can only speculate as to whether the proposed writing accurately reflects the decedent's final testamentary wishes.
>
> [Macool, 416 N.J. Super. at 310.]

Here, Brewer states that "[i]n addition to agreeing to the contents of" the 2016 Draft, decedent "requested the addition of her unborn grandchild as a beneficiary." This request to modify the 2016 Draft directly conflicts with the "final assent" requirement for a will under N.J.S.A. 3B:3-2. Ibid.

In addition, the record shows the 2016 Draft was not in decedent's handwriting. Brewer acknowledges defendant prepared the 2016 Draft and that

decedent did not sign it. Consequently, the 2016 Draft also does not qualify as a holographic will under N.J.S.A. 3B:3-2(b). Therefore, Brewer's claim was properly dismissed with prejudice.

B.

Count three alleges decedent's verbal revocation of the 2013 Will "constitute[s] a revocation for purposes of N.J.S.[A.] 3B:3-13" because decedent did not have a copy or access to said will and because decedent was "limited solely to verbal commands" due to her physical infirmities.

A will may be revoked:

> (a) By the execution of a subsequent will that revokes the previous will or part expressly or by inconsistency; or
>
> (b) By the performance of a revocatory act on the will, if the testator performed the act with the intent and for the purpose of revoking the will or part or if another individual performed the act in the testator's conscious presence and by the testator's direction. . . .
>
> [N.J.S.A. 3B:3-13.]

A "'revocatory act on the will' includes burning, tearing canceling, obliterating or destroying the will or any part of it." N.J.S.A. 3B:3-13(b). "There can be no revocation, unless there be both the act demanded by the statute and the intention stated." In re Spiegelglass, 48 N.J. Super. 265, 268 (App. Div. 1958).

Brewer's revocation claim fails because verbal revocation, unaccompanied by a revocatory act, is insufficient to revoke a will. Ibid.; see Meeker v. Boylan, 28 N.J.L. 274, 306 (Sup. Ct. 1860) (noting that a will can only be revoked in the manner provided by statute, and cannot be revoked by the mere verbal declarations of the testator). Brewer does not allege that decedent burned, tore, cancelled, obliterated or destroyed the 2013 Will or any part of it. Nor does she allege decedent instructed anyone to undertake any such revocatory act on her behalf. In addition, decedent did not execute a subsequent will revoking the 2013 Will expressly or by inconsistency. Therefore, Brewer's claim fails under N.J.S.A. 3B:3-13. Count three was properly dismissed with prejudice.

## C.

Count four alleges defendant exerted undue influence over decedent because he kept the 2013 Will in his office despite having knowledge decedent wanted to revoke it. It further alleges defendant did not present the revised will to decedent until she was on her death bed and did not complete the will with her signature because of a de minimis change.[3] He did not return with a final version of the will before decedent's death.

---

[3] Including an unborn grandchild as an additional beneficiary of a will is not a de minimis change.

Undue influence is defined as "mental, moral, or physical exertion which has destroyed the free agency of a testator by preventing the testator from following the dictates of his own mind and will and accepting instead the domination and influence of another." Haynes v. First Nat'l State Bank, 87 N.J. 163, 176 (1981) (citations omitted). A presumption of undue influence arises if "the will benefits one who stood in a confidential relationship to the testatrix and there are additional circumstances of a suspicious character present which require explanation." In re Rittenhouse's Will, 19 N.J. 376, 378-79 (1955).

"A confidential relationship arises . . . where the parties occupied relations in which reliance is naturally inspired or in fact exists, as the relation between client and attorney." In re Hopper, 9 N.J. 280, 282 (1952) (citations omitted). The suspicious circumstances "need be no more than slight." Haynes, 87 N.J. at 176 (citations omitted). The party contesting a will bears the burden of proving undue influence, unless a presumption of undue influence appears. Rittenhouse, 19 N.J. at 378-79. Ibid.

The motion judge rejected Brewer's "bald assertions" that defendant "was associated with one particular charitable beneficiary of the 2013 Will, which would have been disinherited under the 2016 [Draft]." The motion judge noted Brewer "essentially intimates that [defendant] refused to comply with the [d]ecedent's death-

bed wishes in order to preserve the charitable bequest to the allegedly associated charity." The judge concluded Brewer's theory and the supporting facts "remain tenuous and require great logical leaps in order to make a coherent narrative." Notably, the amended complaint does not contain these unsupported allegations. Instead, Brewer first raised this theory after the Estate moved to dismiss the amended complaint. In footnote ten of her brief, Brewer cryptically refers to defendant being a "Morris County Republican" [and one] of his alleged beneficiaries is the Morris County Women's Republican Club." (Emphasis added). The footnote then asserts four of the "alleged" six beneficiaries have unspecified "connections to [defendant] and/or strange appearance for decedent." We further note that Brewer's proposed second amended complaint does not plead these allegations with specificity.

The amended complaint also fails to allege facts suggesting defendant exercised "coercion or domination" over decedent as to destroy her free agency and compel her to dispose of her property in a manner she would not otherwise have done. In re Livingston's Will, 5 N.J. 65, 73 (1950). Accordingly, count four was properly dismissed. However, Brewer may be able to plead sufficient facts to raise a presumption of undue influence. The motion record identifies defendant as a potential indirect beneficiary of the 2013 Will. Defendant's attorney/client relationship with decedent qualifies as a confidential relationship. Accordingly,

23

Brewer may be able to sufficiently state a claim for undue influence by further amending the complaint. Therefore, count four should have been dismissed without prejudice.

The burden of proof did not shift to defendant because Brewer did not sufficiently plead a prima facie claim for undue influence. If, through amendment, Brewer establishes a prima facie case, then the burden of proof would shift to defendant. See Haynes, 87 N.J. at 176 (explaining the presumption of undue influence "will shift the burden of proof to the proponent"). All applicable defenses are preserved if an amended complaint is filed, including those related to timeliness.

D.

Count one alleges forgery of decedent's signature; count five alleges common law fraud. Brewer stated she was "voluntarily dismissing the forgery claim and in essence sweeping those allegations into fraud."

The elements of common-law fraud are: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." Gennari v. Weichert Co. Realtors, 148 N.J. 582, 610 (1997) (citation omitted). Rule 4:5-8(a) requires that the alleged fraud be pled with particularity to the extent practicable. "A court may

dismiss a complaint alleging fraud if 'the allegations do not set forth with specificity, nor do they constitute as pleaded, satisfaction of the elements of legal or equitable fraud.'" State, Dep't of Treasury v. Qwest, 387 N.J. Super. 469, 484 (App. Div. 2006) (quoting Levinson v. D'Alfonso & Stein, 320 N.J. Super. 312, 315 (App. Div. 1999)).

Brewer contends one of the signatures on the 2013 Will is "substantially dissimilar" to another; and both she and Colavito deny its decedent's signature. Brewer did not retain a handwriting expert to analyze the validity of the signatures on the 2013 Will. Without more, these facts are insufficient under Gennari to state a cause of action for forgery or fraud.

Brewer also alleges defendant committed fraud because he misrepresented to decedent the 2016 Draft would be executed, decedent relied on defendant's misrepresentation, and defendant intentionally failed to execute said will to the detriment of decedent's intended beneficiaries. Brewer asserts defendant was aware decedent was gravely ill and promised her to return quickly with the revised will, but had no intention of doing so.

We concur with the motion judge that defendant's statement to decedent that he would return with a further revised draft was "not a material misrepresentation of a present or past fact, but a declaration of a future intent." Brewer did not

allege defendant misstated an exact timeframe within which he would return. Even if defendant had done so, any such statement would not be a material misrepresentation of a past or present fact.

As noted by the motion judge, the 2013 Will was executed in accordance with N.J.S.A. 3B:3-4, and thereby self-proving. The amended complaint admits that decedent had written Brewer out of the 2013 Will and she intended to execute the 2013 Will; yet Brewer alleges it was incorrectly admitted to probate because decedent had subsequently revoked it.

Brewer failed to state a claim for fraud upon which relief can be granted. She also failed to plead a cause of action for forgery with sufficient particularity and agreed to "voluntarily dismiss[] the forgery claim and in essence sweep[] those allegations into fraud." Brewer does not contend discovery would reveal additional facts in support of her claim. Nor does she offer any additional material facts if permitted to amend her complaint. Therefore, attempting to amend the complaint to state a cause of action would be futile. See Johnson, 401 N.J. Super. at 247 (stating that in a case in which a heightened pleading standard is imposed, "we infer from plaintiff's silence as to additional proposed allegations, that provision of a further opportunity to amend would not be fruitful."). Permitting amendment of a complaint "rests in the court's sound discretion." Kernan v. One Washington

26                                                                      A-2901-17T1

<u>Park</u>, 154 N.J. 437, 457 (1998) (citations omitted). We thus perceive no abuse of discretion in dismissing count five with prejudice. As we have dismissed the fraud claim with prejudice, count one is similarly dismissed.

IV.

We next address the denial of Brewer's application for an award of attorney's fees as untimely. Our standard of review is deferential. "[F]ee determinations by trial courts will be disturbed only on the rarest of occasions, and then only because of a clear abuse of discretion." <u>Packard-Bamberger & Co. v. Collier</u>, 167 N.J. 427, 444 (2001) (quoting <u>Rendine v. Pantzer</u>, 141 N.J. 292, 317 (1995)).

"If probate is granted, and it shall appear that the contestant had reasonable cause for contesting the validity of the will or codicil, the court may make an allowance to . . . the contestant, to be paid out of the estate." <u>R.</u> 4:42-9(a)(3). Such allowance "shall be included in the judgment or order stating the determination." <u>R.</u> 4:42-9(d). "[A] motion for rehearing or reconsideration seeking to alter or amend a judgment or order shall be served not later than [twenty] days after service of the judgment or order upon all parties." <u>R.</u> 4:49-2. Although Brewer's counsel fee application was not technically a motion to rehear or reconsider the court's prior ruling, "[n]o other rule of court is directly applicable." <u>Ricci v. Corp. Express of the E.</u>, 344 N.J. Super. 39, 47 (App. Div. 2001). In <u>Ricci</u>, we concurred with our holding

in <u>Czura v. Siegel</u>, 296 N.J. Super. 187 (App. Div. 1997) to the extent that it interprets the time limitation [<u>Rule</u>] 4:49-2 as applicable to an application for attorney's fees. <u>Ricci</u>, 344 N.J. Super. at 48. Accordingly, an application is timely if it was "made within the time constraints established by <u>Rule</u> 4:49-2." <u>Ibid.</u>

The trial court dismissed the amended complaint on August 4, 2017. Brewer's motion for reconsideration was denied on January 17, 2018. Brewer did not move for counsel fees either prior to or within twenty days after the dismissal or the denial of reconsideration. Even if we consider the denial of reconsideration as the starting point to determine timeliness, the twenty-day filing deadline expired on February 8, 2018. Brewer's application was filed more than four months later on June 11, 2018.

In the interim, on March 2, 2018, Brewer filed an appeal from the dismissal order. Notably, the notice of appeal was also filed after the twenty-day deadline for filing the fee application had expired. On July 27, 2018, we remanded the case for purposes of deciding the fee application.

The trial court denied Brewer's counsel fee application, holding it was time-barred, citing <u>Franklin Medical Associates. v. Newark Public Schools</u>, 362 N.J. Super. 494, 516-17 (App. Div. 2003) and <u>Czura</u>, 296 N.J. Super. at 190. The court noted the Executor and several charitable beneficiaries of the estate had moved for attorney's fees in a timely fashion while Brewer did not. Her application for

attorney's fees was filed well more than twenty days after the dismissal was entered. She did not claim she was somehow unable to meet the filing deadline. We discern no abuse of discretion.

Brewer moved for reconsideration on three grounds: (1) other judges in the vicinage had permitted untimely attorney's fee applications in unrelated probate cases; (2) she was not aware of the twenty-day filing deadline; and (3) she was led to believe the filing of the appeal tolled the filing deadline.

The motion was opposed by the Executor and the Attorney General. The Estate argued Brewer did make out a prima facie case for reconsideration and relied on a certification of Brewer's attorney that was not based on personal knowledge in violation of Rule 1:6-6. The Attorney General joined in the Estate's objection to the certification, noting it was "riddled with hearsay legal arguments" and "presents no admissible facts."

The trial court denied reconsideration. It noted Brewer conceded her fee application was untimely and she failed to include "a statement of the matters or controlling decisions which counsel believes the court has overlooked or as to which it has erred" in her moving papers. R. 4:49-2. Moreover, Brewer did "not claim that the [c]ourt failed to consider or appreciate probative, competent evidence, or bring to the [c]ourt's attention any new or additional information which could not have

29

been provided on the first application."  Nor had Brewer demonstrated "that the [c]ourt's decision was palpably incorrect or irrational."  The trial court noted that the unreported opinions cited by Brewer were "neither precedential nor binding" and were "not supportive of her argument."

The trial court also found Brewer "[had] not produced a single credible reason as to why her application was dilatory for an interests of justice analysis."  The court was unpersuaded by her assertion that it was "overly harsh" to "suddenly impose such a strict, time sensitive deadline that . . . was never announced to her," noting the deadline was imposed by court rule.  The court found the filing delay was "excessive by any standard," and was "especially egregious" since Brewer was represented by counsel, and was on notice that five other counsel fee applications were timely filed.

We review the denial of reconsideration under an abuse of discretion standard. Cummings v. Bahr, 295 N.J. Super. 374, 389 (App. Div. 1996).  We will not disturb a trial court's reconsideration decision "unless it represents a clear abuse of discretion."  Pitney Bowes Bank, Inc. v. ABC Caging Fulfillment, 440 N.J. Super. 378, 382 (App. Div. 2015).  An abuse of discretion "arises when a decision is made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis."  Flagg v. Essex Cty. Prosecutor, 171 N.J. 561,

571 (2002) (citation omitted). For several reasons, we discern no abuse of discretion. First, Brewer did not make out a prima facie case for reconsideration. Her moving papers violated <u>Rule</u> 1:6-6 and did not meet the substantive standards for reconsideration set forth in <u>Rule</u> 4:49-2. Second, Brewer's reliance on unpublished opinions was misplaced.[4] Third, Brewer's lack of knowledge of the filing deadline is no excuse, particularly where she was represented by counsel throughout the proceeding.

We further note that all of Brewer's claims were dismissed. The litigation she pursued did not advance the interests of the beneficiaries of the Estate or otherwise create, preserve, or protect the assets of the estate. Even if successful, the litigation would have benefitted her alone. Fee awards are usually denied if the party seeking the award was advancing only personal interests. <u>See, e.g.</u>, <u>In re Estate of Silverman</u>, 94 N.J. Super. 189, 195 (App. Div. 1967); <u>Bush v. Riker</u>, 77 N.J. Super. 243, 247 (App. Div. 1962). Moreover, Brewer did not qualify for an award of attorney's fees pursuant to <u>Rule</u> 4:42-9(a)(2) since her litigation efforts, if successful, would have redounded only to her own benefit but not the

_____

[4] "No unpublished opinion shall constitute precedent or be binding upon any court." <u>R.</u> 1:36-3. Unreported decisions "serve no precedential value, and cannot reliably be considered part of our common law." <u>Trinity Cemetery v. Wall Twp.</u>, 170 N.J. 39, 48 (2001) (Verniero, J., concurring).

benefit of others. See Henderson v. Camden Cty. Mun. Util. Auth., 176 N.J. 554, 564 (2003) ("The fund in court exception generally applies when a party litigates a matter that produces a tangible economic benefit for a class of persons that did not contribute to the cost of the litigation," but "does not apply when a party litigates a private dispute for its own personal gain" (citations omitted)).

## V.

We next address the denial of Gannon's motion to intervene. Gannon sought to probate an earlier 1992 will that would not disinherit her. She claimed the 2013 will was invalid on the same grounds raised by Brewer. She also claimed the 2016 Draft should not be admitted to probate because it was not executed and did not qualify as a holographic will.

Gannon initially attempted to file a counterclaim. The trial court deemed the counterclaim procedurally incorrect because she was not a party named in the complaint. Gannon then moved under Rule 4:85-1 to intervene, contending intervention was appropriate because her claims and Brewer's claims involved the same operative facts. We are unpersuaded by this argument.

The trial court denied intervention, concluding there was no underlying action in which to intervene since Brewer's amended complaint was dismissed in its entirety with prejudice. The trial court further found the application was

32

not made within a reasonable time and characterized Gannon's attempt at intervention as "an attempt to enter the case through the back door, avoiding the time limitations of [Rule] 4:85-1." The judge also concluded Gannon's claims were not aligned with Brewer's, finding the respective relief sought by Brewer and Gannon to be "profoundly different, and ultimately prejudicial to one another." Therefore, Gannon's reliance on In re Maxson's Will, 90 N.J. Super. 346 (App. Div. 1966) was misplaced.

We discern no abuse of discretion or error by the trial court. The attempt to file a counterclaim was procedurally incorrect and her intervention was not permissible because the underlying action was dismissed in its entirety. Moreover, the record fully supports the trial court's conclusions that: (1) Gannon did not seek intervention within a reasonable time; (2) her claims conflicted with Brewer's claims; and (3) the relief they sought was diametrically opposed.

## VI.

Finally, we address Brewer's claim that a change of venue is required to preserve judicial integrity. We disagree.

A change of venue is warranted "if there is a substantial doubt that a fair and impartial trial can be had in the county where venue is laid." R. 4:3-3(a)(2). The

moving party bears the burden of demonstrating good cause for such change. Pressler & Verniero, cmt. on R. 4:3-3. Brewer has made no such showing.

The remaining arguments raised by Brewer in Point IV of her brief lack sufficient merit to warrant further discussion in a written opinion. R. 2:11-3(e)(1)(E).

VII.

In sum, we affirm the dismissal of counts one, two, three and five of the amended complaint with prejudice. We affirm the dismissal of count four but modify the dismissal to without prejudice. We affirm the denial of Brewer's application for an award of attorney's fees and the denial of Gannon's motion to intervene. The trial court shall issue a modified dismissal order consistent with this opinion within twenty days.

Affirmed as modified. We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION